IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


CHARLENE K. WHITE                                                    PLAINTIFF


V.                              NO. 10-5111


MICHAEL J. ASTRUE,
Commissioner of Social Security Administration              DEFENDANT


## <u>MEMORANDUM OPINION</u>

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a

decision of the Commissioner of the Social Security Administration (Commissioner) denying

her claim for supplemental security income (SSI) benefits under the provisions of Title XVI of

the Social Security Act (Act).  In this judicial review, the Court must determine whether there

is substantial evidence in the administrative record to support the Commissioner's decision.  <u>See</u>

42 U.S.C. § 405(g).

### I.      Procedural Background:

Plaintiff protectively filed her current application for SSI on May 24, 2006, alleging an

inability to work due to her memory, stomach, borderline personality, anxiety, kidney disease,

and chronic kidney and urinary tract infections. (Tr. 83-85, 100-107).  An administrative hearing

was held on January 30, 2008, at which Plaintiff appeared with counsel and testified.  (Tr. 746-

783).   By written decision dated July 16, 2008, the ALJ found Plaintiff had the following severe

-1-

impairments: carpal tunnel syndrome on the right, obesity, peripheral neuropathy, anxiety disorder, and borderline intellectual functioning. (Tr. 13). However, after reviewing all of the evidence presented, she determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 18). The ALJ found that Plaintiff retained the residual functional capacity (RFC) to:

> lift and/or carry 10 pounds frequently, 20 pounds occasionally, and to sit/stand/walk for a total of 6 hours each in an 8-hour workday. She cannot perform rapid, repetitive movements with the right hand, including rapid, repetitive flex/extend the right hand. From a mental standpoint, she is able to perform routine work with superficial contact incidental to work with public and co-workers. Such work has non-complex simple instructions, is learned by rote with few variables, requires little judgment, and supervision is concrete, direct, and specific.

(Tr. 13). With the help of a vocational expert (VE), the ALJ determined that Plaintiff could perform other work, such as: housekeeping; hand packager; and meat processing. (Tr. 17).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on May 27, 2010. (Tr. 3-5). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc.8). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 13, 14).

## II.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.

-2-

3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§423(d)(3), 1382(3)(D).  A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national

-3-

economy given her age, education, and experience.  See 20 C.F.R. §416.920.  Only if the final

stage is reached does the fact finder consider the Plaintiff's age, education, and work experience

in light of her residual functional capacity (RFC).  See McCoy v. Schweiker, 683 F.2d 1138,

1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

## III.   Discussion

One of the Court's concerns is the fact that the ALJ did not find Plaintiff's chronic kidney

disease to be a severe impairment. Instead, the ALJ concluded that Plaintiff's "congenital UPJ

[Ureteropelvic junction] on the right and any related limitations were 'not severe to a degree that

would limit activities beyond the scope of the residual functional capacity as determined in this

decision.'"  There is substantial evidence to support the fact that Plaintiff suffered from a chronic

kidney disease, which has bothered her since 1999.  In fact, Dr. Wilson concluded that her

chronic kidney disease could certainly be a lifelong problem for Plaintiff. .

"An ALJ may deny benefits at step two of the sequential evaluation only if a claimant's

medical impairments are so slight that it is unlikely he or she would be found to be disabled even

if their age, education, and experience were taken into account."  Bowen v. Yuckert, 482 U.S.

137, 153 (1987).  "A majority of the Supreme Court has adopted what has been referred to as a

'de minimis standard' with regard to the step two severity standard."  Hudson v. Bowen, 870

F.2d 1392, 1395 (8th Cir. 1989); Funderburg v. Bowen, 666 F.Supp. 1291 (W.D. Ark. 1987).

"Only those claimants with slight abnormalities that do not significantly limit any 'basic work

activity' can be denied benefits without undertaking the vocational analysis."  Yuckert, 482 U.S.

at 158.

The record clearly reflects that Plaintiff's chronic kidney disease is more than a slight

-4-

AO72A
(Rev. 8/82)

abnormality.  Plaintiff consistently sought treatment for kidney problems since 1999, and many times required hospitalization or surgery to address the problem.  Although the Court recognizes that Plaintiff was working part-time at the time of the hearing, Plaintiff also testified that she often missed work because of her kidney problems.  As late as February of 2008, Plaintiff suffered from moderate to severe right-sided hydronephrosis,[1] and Dr. Wilson opined that she had "persistent hydronephrosis."  On July 27, 2009, Plaintiff was asking for a referral for her ongoing  kidney condition.

When addressing Plaintiff's credibility, the ALJ concluded that Plaintiff had:

> received appropriate medical treatment, including surgical and emergency care, and has been prescribed medications which have been effective in controlling her symptoms as long as she has remained compliant.  In addition, medical exams, imaging studies, and diagnostic testing show no evidence of necessary ongoing medical treatment for any serious medical condition.

(Tr. 14).  While it is true that Plaintiff received appropriate medical treatment for her chronic kidney condition, including surgical and emergency care, based upon the medical evidence, it is clear that Plaintiff continues to suffer with bouts relating to her kidney disease, and the Court believes remand is appropriate in order for the ALJ to obtain a more recent Physical RFC Assessment from an examining urologist, addressing Plaintiff's chronic kidney condition and her ability to function in the workplace.  Upon remand, the ALJ should also consider the additional documents which were considered by the Appeals Council but not by the ALJ.

In addition, the medical records indicate that Plaintiff has limited use of her dominant right hand.  Dr. C.R. Magness, who conducted a General Physical Examination of Plaintiff in

---

[1]Hydronephrosis - Distention of the pelvis and calices of the kidney with urine, as a result of obstruction of the ureter.  Dorland's Illustrated Medical Dictionary 892 (31st ed. 2007).

December of 2006, found that Plaintiff had a 40 degree range of dorsiflexion[2] and palmar[3] flexion motion in her right wrist (out of a range of 0-60 degrees), and that she suffered with pain in the fingers of her right hand.  (Tr. 448-454).  After examining Plaintiff, Dr. Magness concluded that Plaintiff had **moderate to severe limited ability in her right hand, with respect to her ability to handle and finger**.  Her right hand grip was 75% of normal, and her ability to oppose her thumb to fingers was decreased with the right hand.

In a Physical RFC Assessment dated January 4, 2007, Dr. Alice M. Davidson, a non-examining physician, also opined that Plaintiff was limited in her upper extremities in her ability to push and/or pull (including operation of hand and/or foot controls)." Her conclusion was "**no frequent rapid and repetitive flexion extension of the right wrist**." (Tr. 457).  However, Dr. Davidson found that no manipulative limitations were established.  The Court believes Dr. Magness' opinion should be given greater weight than Dr. Davidson's because Dr. Magness examined Plaintiff.  See Davis v. Schweiker, 671 F.2d 1187, 1189 (8th Cir. 1982)(stating that as a general rule, reports of nonexamining physicians deserve little weight in the overall evaluation of disability, especially in light of evidence to the contrary).

In his RFC, the ALJ included the limitation that Plaintiff could not perform "rapid, repetitive movements with the right hand, including rapid, repetitive flex/extend the right hand." In his first hypothetical to the VE, however, the ALJ did not include the right hand limitation, and the VE identified three jobs that Plaintiff would be able to perform - housekeeping, hand packager, and meat processing.  When the ALJ posed his second hypothetical to the VE, which

---

[2]Dorsiflexion - Flexion or bending towards the estensor aspect of a limb, as of the hand or foot.  Id. at 570.

[3]Palmar - Pertaining to the palm.  Id. at 1386.

included the right hand limitation, the VE stated that he would eliminate the hand packager and meat processor positions, and would add the position of driver. In spite of the VE's testimony that the jobs of hand packager and meat processor would be eliminated by Plaintiff's hand limitations, the ALJ found Plaintiff would be able to perform the jobs of hand packager and meat processor, as well as housekeeping, and he made no mention of the driver position.

The Court notes that in all four positions, pursuant to the DOT descriptions, an individual is required to handle frequently or constantly, and two of the positions - meat processor and driver- require no fingering. According to the Regulations, "handling" is defined as seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands. S.S.R. No. 85-15, 1985 WL 56857, at * (1985). "Frequently" means the activity exists from 1/3 to 2/3 of the time. "Constantly" means the activity exists 2/3 or more of the time.

Based upon the records of Dr. Magness and Dr. Davidson, as well as Plaintiff's testimony, the Court fails to see how Plaintiff would be able to perform the jobs identified by the ALJ (meat processor, hand packager, and housekeeping) in his findings, considering Plaintiff's hand and wrist limitations. The Court again recognizes that Plaintiff is working part-time at Taco Bell. However, the Plaintiff also testified that she had trouble with her hand at work and on occasion, dropped a tray. The Court therefore believes remand is appropriate so that the ALJ can more fully and carefully address Plaintiff's ability to perform other work in the national economy, given her right hand and wrist limitations. The Court suggests that upon remand, the ALJ obtain a physical RFC from an examining physician.

**IV.   Conclusion:**

Accordingly, the Court concludes that the ALJ's decision is not supported by substantial

AO72A
(Rev. 8/82)

evidence, and therefore, the denial of benefits to the Plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

ENTERED this 18th day of July, 2011.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-8-